## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LISA MARIE LAICHA,      :    CIVIL NO.: 1:20-CV-00421
              :
     Plaintiff,     :    (Magistrate Judge Schwab)
              :
   v.            :
              :
              :
KILOLO KIJAKAZI, Acting    :
Commissioner of Social Security,[1]  :
              :
     Defendant.    :

## MEMORANDUM OPINION

### I. Introduction.

This is a Social Security action brought under 42 U.S.C. §§ 405(g),

1383(c)(3) (incorporating § 405(g) by reference) of the Social Security Act

("Act").  The plaintiff, Lisa Marie Laicha ("Laicha"), seeks judicial review of the

final decision of the Commissioner of Social Security ("Commissioner") denying

her claims for disability insurance benefits and supplemental security income

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

under Titles II and XVI of the Act.  For the reasons set forth below, we find that the Commissioner's decision is supported by substantial evidence, and accordingly the Commissioner's decision will be affirmed.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 7-1* to *7-19*.  On December 15, 2017, Laicha applied for disability insurance benefits and supplemental security income, alleging that she had been disabled since November 30, 2015. *Admin. Tr.* at 42.  The Social Security Administration denied Laicha's claim initially on May 7,  2018. *Id.*  Following the initial denial of Laicha's claim, the case went before Administrative Law Judge Gwendolyn Hoover (the "ALJ"), who concluded that Laicha, represented by counsel, was not disabled, and denied her benefits on that basis on June 5, 2019. *Id.* at 39-60*.*  Laicha requested a review of the ALJ's decision before the Social Security Administration's Appeals Council, which denied her request on January 6,  2020. *Id.* at 1.  Laicha filed this action on March 11, 2020. *Doc. 1.*  The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 6-7.*  The parties have filed briefs, and this matter is ripe for decision. *Docs. 15-16.*

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Laicha is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Titles II or XVI of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[2]

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

---

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision Denying Laicha's Claim.**

On June 5, 2019, the ALJ issued a decision denying Laicha benefits. *Admin.*
*Tr.* at 39-60.  The ALJ first concluded that Laicha met the insured status
requirements of the Act through December 31, 2019. *Id.* at 44.  At step one of the
five-step sequential-evaluation process, the ALJ found that Laicha had not engaged
in substantial gainful activity since November 30, 2015, the alleged onset date. *Id.*
At step two, the ALJ found that Laicha had the severe impairments of "moderate
degenerative changes at C4-5 and C5-6, and both sacroiliac joints; mild scoliosis
concave to the right; mild thoracic spine degenerative arthritis with intervertebral
joint space narrowing and some anterior osteophyte formation; fibromyalgia;
recurrent major depression; generalized anxiety disorder; and attention deficit
hyperactivity disorder." *Id.* at 45.  Additionally, the ALJ found that Laicha had the
non-severe impairments of "right ankle sprain, left knee contusion, Vitamin D
deficiency, obesity, peroneal tendinitis of the right leg, and episodic opiate abuse."
*Id*.

At step three of the sequential-evaluation process, the ALJ found that none
of Laicha's impairments met or equaled the severity of the impairments listed
under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 45-47.  In making this
finding, the ALJ reasoned that Laicha had no limitations in understanding,
remembering, and applying information; moderate limitations in interacting with

7

others; mild limitations in concentrating, persisting, or maintaining pace; and no limitations in managing herself. *Id*. at 45-46. Additionally, the ALJ found that the "C criteria" for mental disabilities was not met. *Id.* at 46.

The ALJ fashioned an RFC, considering Laicha's limitations from her impairments:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and she can frequently reach, handle, finger, and feel. She can frequently balance and occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, and climb ladders ropes, or scaffolds. She must be able to change positions between sitting and standing as she feels comfortable but would not be off-task more than customary in the work setting. She has the mental capacity for simple and routine tasks and occasional interaction with coworkers and the public.

*Id.* at 47.

In making this determination, the ALJ considered Laicha's testimony that she is unable to work because she is in physical pain, does not have leg strength, and has difficulty sleeping because she has muscle spasms and urinates all night. *Id*. at 47. Additionally, she considered Laicha's claims that she gets winded getting dressed, has difficulty caring for her hair, and has difficulty using the toilet. *Id*. The ALJ also considered Laicha's testimony that she has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, climbing stairs, and using her hands. *Id*. The ALJ further considered Laicha's testimony that she must rest for a minute after walking no more than a block; can stand for 20

minutes; can sit for 20 to 30 minutes; lies down three to four times a day; has difficulty balancing; fears that she will fall in the bath; and has difficulty remembering, completing tasks, concentrating, understanding, following instructions and getting along with others. *Id.* Additionally, the ALJ considered that Laicha claims she cannot finish tasks, cannot pay attention, does not handle stress or changes in routine well, and has panic attacks lasting 40 minutes. *Id.*

The ALJ also considered a March 2018 statement submitted by Laicha's friend and roommate, Karen L. Weaver ("Weaver"), that was consistent with Laicha's testimony. *Id.* The ALJ additionally considered the Social Security field office report stating that Laicha had no difficulty with hearing, reading, breathing, understanding, concentrating, talking, answering, standing, sitting, walking, seeing, using her hands, or with coherency when she presented at her appointment. *Id.* at 47-48. The ALJ found that Laicha's

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

*Id.* at 48.

In addition to the testimony of Laicha and Weaver, the ALJ considered Laicha's treatment records and medical history during the relevant period. The ALJ noted that Laicha had an MRI which showed degenerative changes at C4-5,

C5-6, C5-S1, and both sacroiliac joints; mild scoliosis concave to the right; mild thoracic spine degenerative arthritis with intervertebral joint space narrowing and some osteophyte formation. *Id*. The ALJ also noted that electromyographic examination performed in October of 2018 showed an abnormal study of the right lower extremity and mild chronic right S-1 lumbosacral radiculopathy. *Id*. The ALJ further noted that to treat that condition, Laicha received a spinal cord stimulator, trigger point injections, and medication. *Id*. The ALJ also noted that longitudinal treatment notes showed Laicha was in no acute distress, had a normal gait, full and equal pulses, intact sensation, full strength, full range of motion, good capillary refill, no swelling, no clubbing, no cyanosis, no atrophy, and no edema. *Id*. Additionally, the ALJ considered that at her consultative examination Laicha was able to squat and walk on her toes; needed no assistance; had stable joints, no deformity, and no scoliosis; and had normal findings consistent with those on prior examinations. *Id*. The ALJ considered that in addition to normal grip strength Laicha had finger dexterity. *Id*. Additionally, the ALJ noted that an April 2016 X-ray of the lumbar spine showed moderate degenerative changes at L5-S1 and both sacroiliac joints. *Id*. The ALJ further noted that a  June 2016 X-ray of the thoracic spine showed no acute osseous abnormality of the cervical or thoracic spine and moderate degenerative changes at C4-5 and C5-6. *Id*. The ALJ also considered that in April of 2018 Laicha denied having fallen more than once in the prior year,

10

that in July 2018 she reported that physical therapy was helpful, and that in August 2018 an MRI of the cervical spine revealed annular disc protrusions with associated small osteophytes at C4-5 and C5-6 but no significant spinal stenosis and no nerve impingement. *Id*. at 48-49.  Additionally, the ALJ considered a March 2019 thoracic spine MRI showed mild degenerative changes but no cord compression. *Id*. at 49.  The ALJ considered Laicha's testimony that Gabapentin gave her brain fog and dry mouth but noted that an April 2018 treatment note indicated that Gabapentin was being "well-tolerated." *Id*.  The ALJ found that Laicha's allegations were inconsistent with her activities of daily living as she described them in a form located in the record as Exhibit 4E. *Id*.  In particular, the ALJ considered that Laicha stated in the form that she could attend church, prepare simple meals, do simple cleaning and chores, and count change. *Id*.  The ALJ therefore found Laicha capable of light work and that she could frequently reach, handle, finger, feel and balance; could occasionally stoop, kneel, crawl, crouch, climb ramps and stairs and climb ladders, ropes, and scaffolds, but must be able to change position between sitting and standing without being off tasks more than is customary. *Id*.

With regard to Laicha's mental illness, the ALJ considered that the medical record reflected that Laicha has recurrent major depression, generalized anxiety disorder, and attention deficit hyperactivity disorder. *Id*.  The ALJ further

considered that Laicha had an inpatient admission in December 2016, and then

attended an intensive day program in December 2016 and January 2017. *Id*.  The

ALJ further considered that the notes show Laicha was oriented, cooperative,

appropriately dressed; that Laicha had appropriate mood, appropriate affect,

normal attention, adequate concentration, and normal judgment; and that a March

2016 note indicated that Laicha's symptoms were mild. *Id*.  Additionally, the ALJ

considered that a January  2017 note indicated that Laicha was not attending

appointments and was avoiding staff calls, but that in December 2017 her anxiety

had been improved. *Id*.  The ALJ further considered that at an April 2018

examination Laicha was oriented and well-groomed, had normal eye contact, had

intact attention and concentration, had intact recent and remote memory, showed

fair insight and judgment, and average intellectual functioning. *Id*.  Additionally,

the ALJ considered the activities of daily living form submitted by Laicha at 4E in

which  Laicha said she can prepare simple meals, do simple cleaning and chores,

count change, watch television, read her bible, attend church and spend time with

others. *Id*.  Thus, the ALJ reasoned that Laicha has the mental capacity to perform

simple and routine tasks with occasional interaction with the public and coworkers.

*Id*.

Next, the ALJ considered the medical opinion evidence.  The ALJ

considered the opinion of the State agency medical consultant Michael J. Brown,

DO ("Dr. Brown") that Laicha could perform light work but could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; but could never climb ladders, ropes or scaffolds. *Id*. at 50.  The ALJ found that Dr. Brown's opinion that Laicha could perform light work was supported by the longitudinal record but that the rest of his opinion was inconsistent with her treatment of physical therapy, injections, and medication and was an understatement of her limitations. *Id*.  The ALJ thus found Dr. Brown's opinion partially persuasive. *Id*.

The ALJ considered the opinions of consultative examiner Ahmed Kneifati, MD ("Dr. Kneifati") that Laicha can perform light work." *Id*.  She considered Dr. Kneifati's opinion that Laicha could sit for one hour at a time and five hours total; stand for two hours at a time and four hours total; and walk for one hour at a time and three hours total. *Id*.  The ALJ further considered Dr. Kneifati's opinion that Laicha can frequently operate foot pedals and use her hands; can occasionally perform postural activities; can tolerate loud noise, continuous dust, odors and fumes, pulmonary irritants and vibrations; and occasional unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, extreme cold, and extreme heat. *Id*.  The ALJ reasoned that Dr. Kneifati's opinion that Laicha can perform light work; frequently reach, handle, finger, and feel; and occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, and climb ladders, ropes, and scaffolds was supported by his examination. *Id*.  The ALJ found,

however, that the balance of Dr. Kneifati's opinions was inconsistent with the form submitted by Laicha and located in the record as Exhibit 4E, in which Laicha stated that she attends church, prepares simple meals, and does simple chores. *Id*. Accordingly, the ALJ found Dr. Kneifati's opinion partially persuasive. *Id*.

The ALJ noted that Laicha's treating physician, Thomas Kantor, M.D. ("Dr. Kantor"), submitted a statement. *Id*.  The ALJ considered Dr. Kantor's opinion that Laicha could lift or carry ten pounds; could sit for 30 minutes at a time and four and half hours total; could stand less than 30 minutes at a time and a total of one and a half hours; could walk for five minutes at a time and for a total of 30 minutes; and would need to lie down for 30 minutes four or five times a day. *Id*. The ALJ further considered that Dr. Kantor opined that Laicha could occasionally reach overhead, handle, push, pull and climb ramps and stairs; occasionally operate a foot control with her left foot; never perform non-overhead reaching, fingering, feeling, balancing, stooping, kneeling, crouching, crawling or climbing ladders or scaffolds and could never operate foot controls with her left foot. *Id*.  The ALJ also considered Dr. Kantor's opinion that Laicha can tolerate quiet noise; occasional humidity and wetness; and no unprotected heights, moving mechanical parts, operation of a motor vehicle, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. *Id*.  The ALJ reasoned that the opinions were unsupported by treatment notes and additionally were inconsistent with the form

14

submitted by Laicha located in the record as Exhibit 4E, in which she stated that she attends church, prepares simple meals, and does simple chores. *Id*. at 50-51. Thus, the ALJ found Dr. Kantor's opinion unpersuasive. *Id*. at 51.

The ALJ next considered the narrative letter of Laicha's treating physician, Shirley A. Albano-Aluquin, M.D. ("Dr. Albano-Aluquin"),  that Laicha suffers from chronic pain from myofascial pain syndrome and osteoarthritis which severely impairs her ability to function and limits her quality of life. *Id*. The ALJ reasoned that the statement was not supported by Dr. Albano-Aluquin's treatment notes and was inconsistent with the form submitted by Laicha and located in the record as Exhibit 4E, in which Laicha stated that she attends church, prepares simple meals, and does simple chores. *Id*.

The ALJ considered the opinion of the state agency psychological consultant Salvatore Cullari, Ph.D. ("Dr. Cullari") that Laicha had mild limitations understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations persisting, concentrating, and maintaining pace; and mild limitations adapting or managing herself. *Id*.  The ALJ reasoned that Dr. Cullari's opinion that Laicha had a moderate limitation in interacting with others was consistent with Laicha's inpatient mental health treatment, counseling, and medication; but the balance of Dr. Cullari's opinion

overstated Laicha's limitations and was unsupported by progress notes. *Id.* Therefore, the ALJ found Dr. Cullari's opinion partially persuasive. *Id*.

The ALJ also considered the opinion of consultative examiner, Christopher Gipe, M.S. ("Mr. Gipe"). *Id*. The ALJ considered Mr. Gipe's opinions that Laicha had no limitations in understanding, remembering, and carrying out instructions; marked limitations in interacting with supervisors, co-workers, and the public; and marked limitations in responding appropriately to usual work situations and changes in a routine work setting. *Id*.  The ALJ found that Mr. Gipe's opinion that Laicha is capable of understanding, remembering, and applying information is consistent with Laicha's daily activities which include watching television, reading, and preparing simple meals. *Id*. The ALJ reasoned that the balance of Mr. Gipe's opinions was not consistent with his examination which showed coherent and goal-directed thought processes, intact recent and remote memory, and fair insight and judgment. *Id*.  Thus, the ALJ found that Mr. Gipe's opinion was partially persuasive. *Id*.

The ALJ considered that Laicha sought treatment from a psychiatrist, Jeremy Walters, M.D. ("Dr. Walters"), for mental illness and that Dr. Walters submitted a statement. *Id*.  The ALJ considered that Laicha has a fair ability to remember work-like procedures; understand and remember short simple instructions; carry out short and simple instructions; maintain attention for two-

hour segments; make simple work-related decisions; perform at a reasonable pace

without an unreasonable number and length of rest periods; accept instructions;

respond appropriately to criticism; get along with coworkers or peers without

distracting them or exhibiting behavioral extremes; be aware of normal hazards

and take precautions; set realistic goals and or make plans independently; interact

appropriately with the general public; maintain socially appropriate behavior;

travel in an unfamiliar place; and use public transportation. *Id*. at 51-52.  The ALJ

further considered Dr. Walters' opinion that Laicha would have no useful ability to

maintain attendance and be punctual; sustain an ordinary routine without special

supervision; work in proximity to others without being unduly distracted; complete

a normal workweek or workday without interruption from her symptoms; respond

appropriately to changes in a routine work setting; deal with normal work stress;

understand and remember detailed instructions; carry out detailed instructions, and

deal with the stress of semi-skilled and skilled work. *Id*. at 52.  The ALJ

considered Dr. Walters' opinion that Laicha would be absent more than 3 times per

month; has slight restrictions in activities of daily living; has moderate difficulty

maintain social functioning; has frequent deficiencies of concentration, persistence,

or pace; and has had three or more episodes of decompensation or deterioration in

a work-like setting. *Id*.  The ALJ reasoned that Dr. Walters' opinions are

inconsistent with treatment notes; are unsupported because they are a checklist

with minimal explanation, and are inconsistent with Laicha's lack of inpatient treatment or referral to crisis intervention. *Id*.  Thus, the ALJ found Dr. Walters' opinions unpersuasive.  *Id*.

The ALJ additionally considered the effects of Laicha's fibromyalgia pursuant to SSR 12-2p but reasoned that there were numerous inconsistencies between Laicha's testimony and the evidence of record, including Laicha's reported activities of daily living in the form which she submitted, and which is located in the record at Exhibit 4E, and the findings of the medical sources. *Id*. Thus, the ALJ found Laicha's complaints not fully persuasive. *Id*.

At step four of the sequential evaluation process, the ALJ concluded that Laicha was not capable of performing her past relevant work as a cosmetologist and manager of a barber or beauty shop. *Id*. at 52-53.  Between steps four and five, the ALJ considered that, on the alleged onset date, Laicha was a younger individual but had subsequently changed category to a person closely approaching advanced age; and that Laicha had at least a high school education and could communicate in English. *Id*. at 53.  The ALJ then continued to step five and made the finding that Laicha could perform other jobs available in the national economy and noted the representative positions of inspector and hand packager, assembler of electrical accessories; and bakery worker conveyor line. *Id*. at 53-54. Accordingly, the ALJ found that Laicha was not disabled under the Act. *Id*. at 54.

**V. Discussion.**

On appeal, Laicha challenges the ALJ's decision on three bases: (1) that the ALJ erred in failing to consider the limitations imposed by Laicha's severe impairments; (2) that the ALJ erred in failing to consider the limitations imposed by Laicha's non-severe impairments; and (3) that the ALJ erred in failing to assign proper weight to the treating sources and in failing to consider the claim according to the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix II ("grid rules"). *Doc. 15* at 1-2. We shall address each of Laicha's arguments in turn.

### A. Substantial Evidence Support the RFC Assessment Concerning Laicha's Severe Impairments.

On appeal, Laicha asserts that despite the ALJ's acknowledgment that the record showed that Laicha had degenerative changes in her cervical spine, scoliosis, thoracic spine degenerative arthritis, an abnormal EMG of the right lower extremity indicating chronic S-1 lumbosacral radiculopathy, and an MRI of the cervical spine showing disc protrusions and osteophytes, she did not properly consider the effects those impairments have on Laicha's functioning. *Doc. 15* at 12-13.

Laicha also argues that the ALJ acknowledged that all three treating sources gave consistent opinions that Laicha suffers from a chronic pain syndrome which

limits her activities and function but failed to incorporate their opinions into the RFC. *Id*. at 11-12.  Laicha alleges that the ALJ focused on those treatment notes which support a finding of mild symptoms while ignoring the medical record as a whole, which supports a finding of greater disability and significant pain, and gives the example that the ALJ failed to consider the fact that Laicha had surgery to implant a spinal cord stimulator in order to relieve pain. *Id*. at 10.  Specifically, Laicha argues that the ALJ committed error by rendering an RFC which was contrary to the record as a whole and contrary to the diagnostic studies which included an abnormal EMG study of the right leg; x-rays of the cervical, thoracic and lumbar spine showing degenerative changes; x-rays of the right ankle and right knee, showing a fracture, ligament injury, and swelling; an MRI of the abdomen showing lesions on the liver, bile ducts and gallbladder; and an MRI of the cervical spine showing disc protrusions. *Id*. at 16-17.

In response, the Commissioner argues that the standard of review is deferential to the ALJ. *Doc. 16* at 16-17.  The Commissioner additionally argues that the ALJ did consider the treatment record and clinical studies but also considered "other evidence" which she found evinced an ability to perform a limited range of light work. *Id*. at 17.  The Commissioner further asserts that the ALJ met her burden to explain her findings to the extent that they would allow

"meaningful review" by this court pursuant to *Jones v. Barnhart*, 364 F.3d 501,

505 (3d Cir. 2004). We find that the Commissioner's arguments prevail.

As noted above, Laicha's arguments on appeal largely concern the ALJ's

RFC assessment. *Id.* The Court of Appeals has ruled that the ALJ—not treating or

examining physicians or state agency consultants—must make the ultimate

disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d

356, 361 (3d Cir. 2011). "'[RFC] is defined as that which an individual is still able

to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220

F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359). The court's "review of the ALJ's

assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will

not be set aside if it is supported by substantial evidence." *See Black v. Berryhill*,

No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); *see also Martin v.

Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the

ALJ's conclusions as to a claimant's RFC with the deference required of the

substantial evidence standard of review.") (internal quotation marks omitted).

In assessing a claimant's RFC, the ALJ must consider all evidence of record

and, regardless of its source, "evaluate every medical opinion . . . receive[d]."

*Burnett*, 220 F.3d at 121 (internal citations omitted) ("RFC is assessed by

adjudicators at each level of the administrative review process based on all of the

relevant evidence in the case record, including information about the individual's

symptoms and any 'medical source statements'").  Under the regulations, medical

opinions are defined as "statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of

[the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and

prognosis, what [the claimant] can still do despite impairment(s), and [the

claimant's] physical or mental restrictions." 20 C.F.R. § 404.1520(c).  If a conflict

exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject

evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429

(3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225

F.3d 310, 317 (3d Cir. 2000).  The ALJ must explain the rationale for the weight

afforded to each medical opinion, as this allows for meaningful judicial review.

*Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some

reason for discounting the evidence that [the ALJ] rejects.") (quoting *Mason*, 994

F.2d at 1066)).

 Applying the above standard to the present record, the court concludes that

the ALJ's RFC determination is supported by substantial evidence.  Laicha first

argues that the ALJ provides exertional and non-exertional limitations that are

insufficient in addressing her severe impairments. *Doc. 15* at 13-18.  In pertinent

part, a severe impairment is defined as an "impairment or combination of

impairments which significantly limits" the claimant's "physical or mental ability

to do basic work activities." 20 C.F.R. 416.920(c).  Specifically, Laicha contends

that the ALJ should have included additional limitations in the RFC to address how

ongoing issues related to mental health would impact her ability to remain on task,

need unscheduled breaks, be absent, and should have included limitations for

sitting due to Laicha's pain syndrome. *Doc. 15* at 15-16, 18.

　　In response, the Commissioner argues that the ALJ thoroughly considered

Laicha's severe impairments in crafting the RFC and adequately explained her

rationale in finding no greater functional limitations. *Doc. 16* at 15-16.

Additionally, the Commissioner contends that the ALJ properly considered

Laicha's subjective complaints of pain, complaints of difficulty in concentrating,

and the clinical treatment records. *Id.* at 17.  The Commissioner further contends

that the ALJ did properly consider Laicha's inability to sit and specifically

afforded that Laicha would need to be able to alternate between sitting and

standing as part of the RFC assessment. *Id*. at 18-19.

　　Here, we find that substantial evidence supports the ALJ's RFC assessment.

In this case, the ALJ concluded that Laicha had the following severe impairments:

moderate degenerative changes at C4-5 and C5-6,  and both sacroiliac joints; mild

scoliosis concave to the right; mild thoracic spine degenerative arthritis with

intervertebral joint space narrowing and some anterior osteophyte formation;

fibromyalgia; recurrent major depression; generalized anxiety disorder; and

attention deficit hyperactivity disorder. *Id.* at 45.  As mentioned above, considering

Laicha's severe impairments, the ALJ fashioned the following RFC:

> After careful consideration of the entire record, I find that the claimant
> has the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) and 416.967(b) and she can frequently reach,
> handle, finger, and feel.  She can frequently balance and occasionally
> stoop, kneel, crouch, crawl, climb ramps and stairs, and climb ladders
> ropes, or scaffolds. She must be able to change positions between
> sitting and standing as she feels comfortable but would not be off task
> more than customary in the work setting.  She has the mental capacity
> for simple and routine tasks and occasional interaction with coworkers
> and the public.

*Id.* at 47.

Contrary to Laicha's assertions, the ALJ addressed her severe impairments

by confining her to a limited range of light work and incorporating additional

exertional and non-exertional limitations to address the symptoms caused by her

medical impairments in the RFC.  For example, to address her physical

impairments, the ALJ concluded that Laicha could occasionally climb ramps and

stairs; and that she could occasionally stoop, kneel, crouch, and crawl; and that she

could occasionally climb ladders, ropes, or scaffolds. *Id.*  Additionally, as noted by

the Commissioner, the ALJ addressed Laicha's difficulty in sitting for long periods

by affording an at-will sit/stand option. *Id.*  To address Laicha's mental

impairments, the ALJ concluded that "she was limited to simple, routine tasks,"

and additionally restricted Laicha to occasional interaction with both coworkers

and the public. *Id.*

Moreover, despite Laicha's argument, the ALJ did consider her doctors' reports that she suffered from a pain syndrome and that she underwent surgery to have a spinal cord stimulator implanted. The ALJ noted the fact that the spinal cord stimulator was in place. *Id*. at 48. The ALJ properly referenced Dr. Aluquin-Albano's statement that Laicha suffered from a pain syndrome but reasoned that the limitations to which Dr. Aluquin-Albano opined were inconsistent with the treatment notes showing full strength, normal gait, and no apparent distress. *Id*. at 51.

Laicha contends that the exertional and non-exertional limitations included in the RFC are insufficient in addressing her physical and mental impairments. However, beyond limitations as to sitting which have been addressed by the ALJ, Laicha has failed to indicate the additional limitations that should have been included in the RFC and fails to provide any evidentiary support demonstrating the need for additional functional limitations. We, therefore, find that the ALJ adequately accounted for Laicha's severe impairments in crafting the RFC and conclude that the ALJ's RFC determination is supported by substantial evidence.

## B. Substantial Evidence Supports the ALJ's Step Two Evaluation

Next, Laicha argues that the ALJ erred at step two by failing to consider her limitations regarding right ankle disorder, knee issue, peroneal tendinitis of the right leg, complex regional pain syndrome, and lumbosacral

radiculopathy with evidence of nerve root compression. *Doc. 15* at 19-20.  The
Commissioner counters that Laicha's argument is semantical, as the conditions
referenced by Laicha were addressed as symptoms of conditions found severe at
the RFC stage, and Laicha fails to identify any actual work-related limitations
caused by these conditions. *Doc.* 16 at 19-21.  Moreover, the ALJ did not decide
this case at step two.

      As noted above, the step two determination as to whether a claimant is
suffering from a severe impairment is a threshold analysis requiring the showing of
only one severe impairment. *Bradley v. Barnhart*, 175 F. App'x 87, 90 (7th Cir.
2006).  So long as a claim is not denied at step two, however, it is not necessary for
the ALJ specifically to have found any additional alleged impairment to be severe.
*See*, *e. g.*, *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007);
*Lee v. Astrue*, Civ. No. 06-5167, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12,
2007); *Gerald v. Berryhill*, No. 3:17-CV-00575, 2018 WL 7364649, at *5 (M.D.
Pa. Oct. 12, 2018), *report and recommendation adopted*, No. CV 3:17-575, 2019
WL 719829 (M.D. Pa. Feb. 19, 2019); *Sardina-Garcia v. Saul*, No. CV 19-1528,
2020 WL 5797949, at *1 (W.D. Pa. Sept. 28, 2020).  In other words, as long as a
claim is not denied at step two, it is not generally necessary for the ALJ to have
found any additional alleged impairment to be severe. *Salles*, 229 F. App'x at 145
n.2.

Since Laicha's claim was not denied at step two, the inquiry is not whether the ALJ found her right leg, ankle, knee, or lumbosacral radiculopathy to be severe impairments.  Rather, the inquiry is whether the ALJ properly accounted for any issues caused by the conditions found non-severe in formulating Laicha's RFC.  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(2).

The ALJ specifically discussed that a brace was used to treat Laicha's right ankle sprain and left knee contusion, and that two separate X-Rays revealed no fracture or dislocation to Laicha's right ankle. *Admin. Tr.* at 45.  The ALJ acknowledged in her discussion of the record both the fact that Laicha had an EMG study that indicated chronic right S-1 lumbosacral radiculopathy, as well as the fact that Laicha received a spinal cord stimulator, trigger point injections, and physical therapy to alleviate her pain. *Id*.  This is in stark contradiction to Laicha's assertion that the ALJ did not consider Laicha's lumbosacral radiculopathy or that she underwent surgery to implant a spinal cord stimulator. *Doc. 15* at 17-19.  Indeed, the ALJ did consider that evidence and weighed it against other evidence in the record.

27

Additionally, we disagree with Laicha in her assertion that the ALJ did not consider that Laicha suffered from complex regional pain syndrome. *Id*. at 19.  On the contrary, the ALJ noted that Dr. Aluquin-Albano opined that Laicha suffered from chronic pain which limited her ability to function and work, and also limited her quality of life. *Admin. Tr.* at 51.  The ALJ reasoned that treatment notes showed no apparent distress, a non-antalgic gait, and good strength.  *Id*.

As a whole, we find that the ALJ considered those conditions and gave proper reasoning for her finding that they were not severe impairments.  Moreover, we find that because the ALJ properly considered the effects that all of Laicha's impairments had as a whole, she properly exercised her duty in drafting the RFC assessment.

### C. The ALJ Did Not Err in Evaluating the Opinions of Laicha's Treating Sources and Did Not Err in Applying the Grid Rules.

#### 1. Laicha's Treating Sources Were Not Entitled to Controlling Weight.

Laicha argues that the medical opinions of her treating physicians were entitled to controlling weight pursuant to 20 C.F.R. 404.1527(c)(2). *Doc. 15* at 21-24.  The Commissioner argues that the new regulations under which an ALJ must weigh medical opinion evidence has changed, and the ALJ properly evaluated the medical opinions according to such regulations. *Doc.* 16 at 21-25 (citing 20 C.F.R. §§ 404.1520c, 404.1513).

We find that the Commissioner prevails as to this issue. Because Laicha's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence. The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Laicha's, filed on or after March 27, 2017, on the other hand. Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

29

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).  And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)-(c)(6), 416.927(c)(2)-(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b),

416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*.  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Here, the ALJ cited the opinions of each treating source concerning Laicha's impairments.  She considered the opinion of the treating source, Dr. Kantor, and found it to be unpersuasive, reasoning that the opinion was inconsistent with his treatment notes which showed full strength, normal joint mobility, and normal range of motion, as well as Laicha's self-reported activities of daily living. *Admin. Tr*. at 50-51.  The ALJ additionally considered the opinion of Dr. Aluquin-Albano and found it unpersuasive. *Id*. at 51.  In doing so, the ALJ reasoned that the opinion was inconsistent with Dr. Aluquin-Albano's treatment notes indicating no apparent distress, non-antalgic gait, and good strength. *Id*.  Finally, the ALJ considered the opinion of psychiatrist Dr. Walters and found it unpersuasive. *Id*. at 52.  The ALJ articulated her reasoning that Dr. Walters' opinion was inconsistent with his treatment notes showing Laicha's normal behavior, speech, and affect; logical

thought content; good recent and remote memory; and intact judgment. *Id.* at 51-52.

We find that the ALJ's consideration of each treating source opinion meets the standard in the new regulations insofar as the ALJ articulated why she found the opinions unpersuasive and specifically addressed supportability and consistency. *See* 20 C.F.R. § 404.1520c(a)-(b)(2).  The ALJ provided reasons for her persuasiveness determination, each of which is appropriate and supported by the record. *See Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (explaining that an ALJ may not "reject evidence for no reason or for the wrong reason"); *Opsanic v. Comm'r of Soc. Sec.*, No. CV 20-123-E, 2021 WL 3354022, at *1 (W.D. Pa. Aug. 2, 2021).

### 2.  The ALJ Did Not Err in Not Applying the Grid Rules.

Laicha argues that the ALJ should have at least considered the matter for a finding of disability based upon Grid Rule 201.12 as of Laicha's 50th birthday. *Doc.* 15 at 24-25; *see* 20 C.F.R. Part 404, Subpart P, App'x 2, Rule 201.12 ("Grid Rule 201.12").

We find Laicha's argument unpersuasive.  It is of note that Laicha was 50 years old at the time of the hearing and at the time that the decision was entered and was thus defined as being in a category of one "closely approaching advanced age" pursuant to 20 C.F.R. §§ 1404.1563 and 416.963.

33

Under Grid Rule 201.12, a finding of disability would be warranted if the individual was limited to a range of no more than sedentary work; was over the age of 50; had an education which was high school or more but "does not provide for direct entry into skilled work," and the individual had past relevant work which was unskilled or had no part relevant work. 20 C.F.R. Part 404, Subpart P, App'x 2, Rule 201.12.

The ALJ did not find that Laicha was limited to a range of sedentary work; rather, she found her to be limited to a range of light work. For that reason, an argument that Laicha should have been found disabled according to Rule 201.12 amounts to a request to rework the ALJ's RFC determination.

Laicha argues that if the ALJ had given controlling weight to Dr. Kantor's opinion, she would have found Laicha capable of no more than sedentary work and thus would have found her disabled as of her 50th birthday pursuant to the Medical-Vocational Guidelines. In making this argument, Laicha is again attacking the RFC finding in this case and is again asking that we reweigh the evidence in the case to give Dr. Kantor's opinion the controlling weight to which it is not entitled under the new regulations. Again, this is something that we cannot do.

Because we find that the ALJ's RFC determination that Laicha is capable of a range of light work is supported by substantial evidence, we find that the ALJ

34

was not obliged to consider Grid Rule 201.12 because such rule only applies to individuals limited to sedentary exertional levels. *See*, *e.g.*, *McGinnis v. Comm'r of Soc. Sec.*, No. 12-1395, 2013 WL 6710344, at *11 (W.D. Pa. Dec. 18, 2013) (finding Grid Rule 201.12 inapplicable to a claimant with a light-work RFC since that would "require reducing her exertional level from light to sedentary work"). Accordingly, we find that Laicha's argument fails.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Laicha.  The Clerk of Court will be directed to close this case.  An appropriate order follows.


*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge